## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

| | |
|---|---|
| ROBERT HOSSFELD on behalf of himself and others similarly situated, )<br><br>Plaintiff, )<br><br>v. )<br><br>GOVERNMENT EMPLOYEES INSURANCE COMPANY (D/B/A GEICO), Defendant. )<br>_____ ) | Case No. |

ROBERT HOSSFELD on behalf of himself
and others similarly situated,

      Plaintiff,

      v.

GOVERNMENT EMPLOYEES
INSURANCE COMPANY (D/B/A GEICO),
    Defendant.

Case No.

## CLASS ACTION COMPLAINT

1.      The Telephone Consumer Protection Act, 47 U.S.C. §227(b)(1)(A)(iii) ("TCPA") was enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance automated telemarketing practices. *Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 377 (4th Cir. 2013).

2.      Toward that end, the TCPA contains a blanket prohibition against use of any automatic telephone dialing system to call cellular telephones. *Mims v. Arrow Financial Services, LLC,* 132 S.Ct. 740, 745 (2012). There is an affirmative defense available if the caller has the recipient's prior express consent to receive such calls.

3.      Defendant GEICO, or some person authorized to act on its behalf, used an automatic telephone dialing system to call Mr. Hossfeld's cell phone, in attempts to sell insurance policies.

4.      Because the calls were transmitted using technology that generated thousands of telemarketing calls per day, and because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, Mr. Hossfeld brings this

action on behalf of himself and a proposed nationwide class of other persons who received illegal telemarketing calls from this Defendant.

## Jurisdiction and Venue

5.      This Court has subject matter jurisdiction over the claims in this case under 28 U.S.C. § 1331 because this action arises out of a violation of federal law. 47 U.S.C. §227(b); *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

6.      Venue is appropriate in this district pursuant to 18 U.S.C. 1391(b), because Defendant has its headquarters here, and has purposefully availed itself to the resources and protection of the State of Maryland.

## Parties

7.      Plaintiff Robert Hossfeld is an individual citizen of the State of Texas.

8.      Defendant GEICO has its corporate headquarters within this District, in Chevy Chase, Maryland.

## Legal Basis of the Claims

9.      In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]"  Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

10.     Through the TCPA, Congress outlawed telemarketing via unsolicited automated or pre-recorded telephone calls ("robocalls"), finding:

> [R]esidential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.

. . . .

> Banning such automated or prerecorded telephone calls to the home, except
> when the receiving party consents to receiving the call[,] . . . is the only effective
> means of protecting telephone consumers from this nuisance and privacy
> invasion.

*Id.* § 2(10) and (12); *see also Mims*, 132 S. Ct. at 745.

11.     The TCPA prohibits persons from making any telephone call to a cellular telephone using an automatic telephone dialing system, and also prohibits use of artificial and prerecorded messages during such calls. 47 U.S.C. § 227(b)(1)(A)(iii); *see also* 47 C.F.R. § 64.1200(a)(1).

12.     A seller may be held liable for calls that were placed by another entity under a "broad range" of agency principals, including but not limited to formal agency, apparent agency and ratification. *In re Joint Pet. filed by Dish Network, LLC*, FCC 13-54 ¶ 37, 2013 WL 193449 (May 9, 2013) ("FCC Ruling").

<u>FACTS</u>

13.     On February 12, 2014, at approximately 1:19pm plaintiff received a telephone call on his cellular telephone. The caller ID for this call was 301-686-7207. Plaintiff's cellular telephone was on the National Do Not Call Registry at the time of the call.

14.     There was a distinctive pause on the line when plaintiff answered the call, which indicated to plaintiff that a machine, rather than a human being, dialed the call.

15.     Upon information and belief, based upon the pause on the call and the general practices of the telemarketing industry, this call was dialed by telephone phone system that stored or produced telephone numbers to be called, and then dialed the numbers in sequential order as part of an automatic dialing campaign to call thousands of persons, just like plaintiff.

16.     Upon information and belief, the system was programmed to dial the calls "intelligently," so as not to overwhelm live agents that field calls.

3

17.     The live operator stated that he wanted to save plaintiff money on car insurance, and asked plaintiff whether (a) plaintiff was over eighteen years old, and (b) plaintiff owned a car. Plaintiff answered in the affirmative for both.

18.     The statements from the live operator were impersonal and sounded rehearsed, like they were being read from a script. Upon information and belief, the live operator *was* reading these statements from a marketing script that was used during thousands of identical outbound telemarketing calls made in order to help obtain customers for GEICO.

19.     The representative then told plaintiff that he would connect plaintiff with an insurance company.

20.     Plaintiff then heard a series of beeps, and was connected with another live salesperson.

21.     The salesperson began this portion of the call by asking plaintiff whether he wanted to save money on his car insurance. This statement was part of a scripted sales pitch for GEICO goods and services.

22.     Plaintiff asked what company the salesperson worked for. The salesperson's response was that she worked for GEICO. Upon information and belief, the salesperson's statement that her employer was GEICO was true.

23.     Plaintiff told the GEICO salesperson that he was on the National Do Not Call Registry.

24.     The salesperson asked plaintiff whether he had previously been placed on GEICO's internal Do Not Call list; plaintiff responded that he had not.

25.     The GEICO salesperson assured plaintiff that he would be placed on GEICO's internal do not call list, and that he would not be called again.

4

26.     This is the only call of which plaintiff is aware. Discovery will reveal whether GEICO or others on its behalf made other such calls.

27.     GEICO knew that this telemarketing call was to a cell phone, and knew that it was dialed by an automated dialer. Alternatively, it should have known.

28.     GEICO regularly and knowingly accepts "leads" that are derived through calls like the one described above. Moreover, GEICO uses those leads to attempt to sell insurance products and services.

29.     Indeed, often times the "leads" are successful. GEICO regularly and knowingly accepts business derived through such calls.

30.     Upon information and belief, GEICO has a contract or course of dealing as to the company that initially placed this call, which provides for compensation to that company for leads that are referred, like that which occurred with respect to plaintiff.

31.     GEICO has been sued for similar conduct before. *Matejovich v. GEICO*, No. 13-cv-71449 (N.D.Ill.) alleged nearly identical violations.[1] Upon information and belief, *Matejovich* is not the only time GEICO has been sued for this type of alleged violation.

32.     Despite the fact that it was placed on notice that such calls may violate the TCPA, GEICO continues to participate in such telemarketing, and to accept leads and business derived therefrom. The call to plaintiff happened after GEICO was served with *Matejovich*. Service was effectuated on GEICO in that case on October 9, 2013.

33.     Neither GEICO nor the company that placed this call had plaintiff's "prior express consent" to receive the call. Upon information and belief, plaintiff's phone number was obtained as part of a marketing list that was purchased and then indiscriminately loaded into an autodialer, or similar arrangement.

---

[1] GEICO was eventually dismissed from *Matejovich* without prejudice.

34.     GEICO is directly liable for the telemarketing calls challenged here because it "made" the calls. Although it may not have "pressed the button" to activate the dialer, it was an active and knowing participant in the illegal calls. *Maryland v. Universal Elections, Inc.*, 862 F.Supp.2d 457, 463 (D.Md. 2012), *aff'd*, 729 F.3d 370 (4th Cir. 2013).

35.     GEICO is also vicariously liable for the calls through principles of ratification. It paid for the calls and leads, and accepted the benefit of the calls by attempting to sell insurance during them. Moreover, GEICO was placed on notice of the alleged violation through *Matejovich*, and continued participation in similarly illegal telemarketing.

36.     GEICO is also vicariously liable for the calls under the black-letter law principle that a person cannot avoid liability by hiring another to violate the law. See Restatement (Third) of Agency § 7.06; see also *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1438 (3d Cir. 1994).

37.     GEICO is also vicariously liable for the calls under principles of formal agency and apparent agency. The telemarketing scheme alleged herein is designed to be opaque, and to conceal the nature of the relationship between the caller and GEICO. Discovery will reveal the nature and extent of GEICO's control over the timing and methodology of the telemarketing.

<u>Class Action Allegations</u>

38.     As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

39.     The class of persons Plaintiff proposes to represent is tentatively defined, subject to modification after discovery and case development as:

All persons within the United States who GEICO or some party on its behalf, called on their cell phone using a predictive dialer for purposes of marketing GEICO products or services, who did not previously give such number to GEICO.

Collectively, all these persons will be referred to as "Class members."

Plaintiff alleges a subclass of persons within the class, whose phone calls were transferred to GEICO itself.

42.    Excluded from the Class are Defendant, and any entities in which Defendant has a controlling interest, the Defendant's agents and employees, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family, and claims for personal injury, wrongful death and/or emotional distress.

43.    Class members are identifiable through lead records, phone records and phone number databases.

44.    Upon information and belief, the class members number at least in the thousands. Individual joinder of these persons is impracticable.

45.    Plaintiff is a member of the class.

46.    The Plaintiff and the class have all been harmed by the actions and omissions of the Defendant. Their privacy has been improperly invaded and thy have sustained a nuisance as a result of the calls. Moreover, their statutorily protected rights have been violated.

47.    This Class Action Complaint seeks injunctive relief and monetary damages.

48.    There are questions of law and fact common to Plaintiff and to the proposed class, including but not limited to the following:

a.    Whether GEICO is directly or vicariously liable for violations of the TCPA arising out of the calling of cell phones using an automatic telephone dialing system;

b.    Whether GEICO can meet its burden of proof with respect to statutory defenses for such calls, given that no class member has provided his or her number to GEICO;

      c.      Whether GEICO's illegal conduct was knowing and/or willful;

      d.      Whether GEICO should be enjoined from engaging in such conduct in the future.

49.     Plaintiff is an adequate representative of the class because his interests do not conflict with class member interests, he will fairly and adequately protect class member interests, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

50.     Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.  The only individual question concerns identification of class members, which will be ascertainable from records maintained by GEICO and its vendors.

51.     The likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

52.     The interest of the Class members in individually pursuing claims against GEICO is minimal because the statutory damages for an individual action are relatively small, and are therefore not likely to deter Defendant from engaging in the same behavior in the future.

53.     Moreover, because the calls were designed to conceal the identity of the seller until it was learned that the recipient was interested in car insurance, many class members likely have no idea these calls were linked to GEICO.

54.     Defendant has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate.

55.     The Plaintiff has retained counsel experienced in handling class action claims involving violations of federal consumer protection statutes, including claims under the TCPA.

56.     Plaintiff is unaware of pending litigation concerning this controversy commenced by others who meet the proposed class definition.

## COUNT I – AUTOMATED CALLS TO CELL PHONES

57.     Plaintiff incorporates all prior paragraphs of this Complaint.

58.     The foregoing acts and omissions of Defendant and its vendors and telemarketers constitute violations of the Telephone Consumer Protection Act, 47 U.S.C. §227(b)(1)(A)(iii).

59.     Defendant is directly and/or vicariously liable for the violations above.

60.     There is no scienter requirement to prove these violations of the TCPA. 47 U.S.C. §227(b)(3). However, because Defendant's violations were willful and/or knowing, plaintiff and the class members are entitled to a maximum of up to treble the minimum statutory amount of $500, for a maximum of $1,500 for each violation. *Id*.

61.     Plaintiff and all Class members are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by Defendant in the future. *Id*. Plaintiff seeks such injunctive relief in addition to, and/or as an alternative to money damages.

## DEMAND FOR JURY TRIAL

On behalf of himself and members of the class and subclass, Plaintiff demands a jury trial on all issues triable by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiffs and all Class members the following relief against the Defendant:

a.  Statutory damages of $500 per call, pursuant to 47 U.S.C. §227(b)(3);

9

b.  Treble damages if the violations are proven to be willful or knowing; *Id*.

c.  An order certifying this case as a class action pursuant to Fed.R.Civ.P. 23(b)(3).

d.  Any other relief the Court finds proper and appropriate.

/s/ Peter A. Holland
PETER A. HOLLAND
Federal Bar No. 10866
The Holland Law Firm, P.C.
P.O. Box 6268
Annapolis, MD 21401
410 280 6133
peter@hollandlawfirm.com

Motions for Pro Hac Vice Admission Simultaneously Applied For:
Alexander H. Burke
Burke Law Offices, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
aburke@burkelawllc.com

Law Office of Scott D. Owens, Esq.
664 E. Hallandale Beach Blvd.
Hallandale, Florida 33009
(954) 589-0588
(954) 337-0666 (fax)
scott@scottdowens.com

## DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that Defendant take affirmative steps to preserve all recordings, data, emails, recordings, documents and all other tangible things that relate to the allegations herein, plaintiff or the putative class members, or the making of telephone calls, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with plaintiff or the putative class members, and any account or number or symbol relating to any of them.

Plaintiff also demands that Defendant take affirmative steps to identify all third parties that may have been involved in the sort of telemarketing alleged herein instruct those them and any subvendors to initiate robust litigation holds as to call records and lead records, and preserve those materials.

10

These materials are very likely relevant to the litigation of this claim.  If defendant is aware of any third party that may have possession, custody or control of any such materials, plaintiff demands that defendant request that such third party also take steps to preserve the materials.  This demand shall not narrow the scope of any independent document preservation duties of the defendant.


/s/ Peter A. Holland