UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| ROBERT HOSSFELD and CHRISTOPHER LEGG on behalf of themselves and others similarly situated,<br><br>    Plaintiff,<br><br>        v.<br><br>GOVERNMENT EMPLOYEES INSURANCE COMPANY (D/B/A GEICO),<br>    Defendant. | Case No. 1:14-cv-00876-WDQ |

## AMENDED CLASS ACTION COMPLAINT

1. The Telephone Consumer Protection Act, 47 U.S.C. §227(b)(1)(A)(iii) ("TCPA") was enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance automated telemarketing practices. *Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 377 (4th Cir. 2013).

2. Congress passed the TCPA because it found "'[c]omputerized calls [to be] the scourge of modern civilization' and believed that they 'threaten our personal health and safety.'" *Jay Clogg Realty Group, Inc. v. Burger King Corp.*, No. PWG-13-662, 2014 U.S. Dist. LEXIS 52395, at *15 (D.Md. Apr. 16, 2014) (quoting 137 Cong. Rec. S16204–01 (statement of Sen. Hollings)).

3. The TCPA contains a blanket prohibition against use of any automatic telephone dialing system to call cellular telephones. *Mims v. Arrow Financial Services, LLC,* 132 S.Ct. 740, 745 (2012). There is a narrow affirmative defense available for telemarketing calls like these if the caller has the recipient's prior express *written* consent to receive such calls. 47 C.F.R. §§ 64.1200(a)(2); 64.1200(f)(8).

1

4.	Defendant GEICO, or some person authorized to act on its behalf, used an automatic telephone dialing system to call the cellular telephones of plaintiffs Hossfeld and Legg, in attempts to sell GEICO insurance policies.

5.	GEICO did not have prior express written consent to make such calls.

6.	Because the calls were transmitted using technology that generated thousands of telemarketing calls per day, and because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, plaintiffs bring this action on behalf of themselves and a proposed nationwide class of other persons who received illegal telemarketing calls from this Defendant.

## Jurisdiction and Venue

7.	This Court has subject matter jurisdiction over the claims in this case under 28 U.S.C. § 1331 because this action arises out of a violation of federal law. 47 U.S.C. §227(b); *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

8.	Venue is appropriate in this district pursuant to 18 U.S.C. 1391(b), because Defendant has its headquarters here, and has purposefully availed itself to the resources and protection of the State of Maryland.

## Parties

9.	Plaintiff Robert Hossfeld is an individual citizen of the State of Texas.

10.	Plaintiff Christopher Legg is an individual citizen of the State of Florida.

11.	Defendant GEICO has its corporate headquarters within this District, in Chevy Chase, Maryland.

Legal Basis of the Claims

12. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

13. Through the TCPA, Congress outlawed telemarketing via unsolicited automated or pre-recorded telephone calls ("robocalls"), finding:

> [R]esidential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.
> . . . .
> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call[,] . . . is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* § 2(10) and (12); *see also Mims*, 132 S. Ct. at 745.

14. The TCPA prohibits persons from making any telephone call to a cellular telephone using an automatic telephone dialing system, and also prohibits use of artificial and prerecorded messages during such calls. 47 U.S.C. § 227(b)(1)(A)(iii); *see also* 47 C.F.R. § 64.1200(a)(1).

15. A seller may be held liable for calls that were placed by another entity under a "broad range" of agency principals, including but not limited to formal agency, apparent agency and ratification. *In re Joint Pet. filed by Dish Network*, *LLC*, FCC 13-54 ¶ 37, 2013 WL 193449 (May 9, 2013) ("FCC Ruling").

16. GEICO is directly liable for the calls to plaintiffs and the class. Alternatively, it is vicariously liable for such calls, and/or is liable under agency principles.

**FACTS**

3

**Plaintiff Hossfeld**

17. On February 12, 2014, at approximately 1:19pm plaintiff received a telephone call on his cellular telephone. The caller ID for this call was 301-686-7207. Plaintiff's cellular telephone was on the National Do Not Call Registry at the time of the call.

18. There was a distinctive pause on the line when plaintiff answered the call, which indicated to plaintiff that a machine, rather than a human being, dialed the call.

19. Upon information and belief, based upon the pause on the call and the general practices of the telemarketing industry, this call was dialed by telephone phone system that stored or produced telephone numbers to be called, and then dialed the numbers in sequential order as part of an automatic dialing campaign to call thousands of persons, just like plaintiff.

20. Upon information and belief, the system was programmed to dial the calls "intelligently," so as not to overwhelm live agents that field calls.

21. Plaintiff has obtained a recording of the conversation from a third party, which unofficially transcribed went like this:

> Caller: Hi, this is John Matthews, calling with regards to your interest in an auto insurance quote. Am I speaking with Shelly Morris? Hello?
>
> Hossfeld: Hello.[1]
>
> Caller: Hi sir. This is John Matthews. How are you doing this afternoon.
>
> Hossfeld: All right.
>
> Caller: Oh. Sounds great. Sir, because you are an owner, you are entitled to a free insurance quote with a car insurance specialist to see if you can save money on your auto insurance premiums. Okay?
>
> Hossfeld: Hrmph.

---

[1] Plaintiff did not hear the portion of this recording before he said, "hello." Upon information and belief, this happened because the dialer system on which the call was made indicated to the telemarketer that plaintiff was ready to receive a call before plaintiff had placed the phone up to his ear. Apparently, the telemarketer was so anxious to make a sale that he began his marketing pitch before plaintiff was listening.

Caller: The best quote for you, sir, you will get the best bill, to save your money.

Hossfeld: I have to ask some questions before we go ahead, like: Do you currently have a car insurance policy?

Caller: You sir are over the age of eighteen years, correct?

Hossfeld: Correct.

Caller: Great. And sir, do you have a valid, active driver's license?

Hossfeld: Yes.

Caller: Alright. And I'd like to tell you, sir, that with this free quote, you can find how much money exactly you can be saved on your insurance premiums, okay?

Hossfeld: Okay.

Caller: Alright. So without wasting more time, sir, I will quickly go ahead and connect your call with the representation. They will quickly go ahead and analyze your current insurance, to see where they can save you costs, to low down your premiums.

Caller: And sir, let me tell you [indecipherable] for you, while I transfer your call, you will hear a brief pause, and then you will hear a [indecipherable]. Follow the instructions and just stay on the line and in a moment you will be connected with a representative agent. Just ask for your free quote. Alright, Sir?

Hossfeld: Yes. Do you have a website?

Caller: Uh, alright. We do have, sir. I will transfer you to a specialist, they are the best person who can help you with all information, like email website and telephone numbers, they are the best person who can help you.

Hossfeld: Okay sir?

Caller: Okay. So be on the line and someone will be with you right away.

[Beep]

22.    The statements from the live operator were impersonal and sounded rehearsed, like they were being read from a script. Upon information and belief, the live operator *did* take these statements from a marketing script that was used during thousands of identical outbound telemarketing calls made in order to help obtain customers for GEICO.

5

23. After plaintiff heard the beep or series of beeps, he was connected with another live salesperson.

24. The second salesperson began this portion of the call by asking plaintiff whether he wanted to save money on his car insurance. This statement was part of a scripted sales pitch for GEICO goods and services.

25. Plaintiff asked what company the salesperson worked for. The salesperson's response was that she worked for GEICO. Upon information and belief, the salesperson's statement that her employer was GEICO was true.

26. Plaintiff told the GEICO salesperson that he was on the National Do Not Call Registry.

27. The salesperson asked plaintiff whether he had previously been placed on GEICO's internal Do Not Call list; plaintiff responded that he had not.

28. The GEICO salesperson assured plaintiff that he would be placed on GEICO's internal do not call list, and that he would not be called again.

29. This is the only call to plaintiff of which plaintiff has a record. GEICO's records, or the records of third parties, may reveal that GEICO (or others on its behalf) made additional calls to Hossfeld.

30. Plaintiff Hossfeld has no relationship with GEICO, and never provided prior express written consent to receive telemarketing from GEICO.

31. Despite that GEICO knew or should have known that this telemarketing call was made to a cell phone, and that it was dialed by an automated dialer, defendant GEICO participated in the call and attempted to sell plaintiff auto insurance during the call.

32. Because it participated in the call and introduced the advertising pitch, GEICO "made" the call within the meaning of the TCPA, and is subject to direct liability for such.

33. Moreover, GEICO is subject to vicarious liability for the Hossfeld call, too. GEICO dictated the details surrounding the call to Hossfeld.

34. For example, in order to accept telemarketing call transfers, sellers must tell their telemarketers and lead generators the speed and volume of calls so that its operators do not become overwhelmed.

35. Upon information and belief, GEICO dictated how quickly (or slowly) the dialer made calls, so that its sales agents could handle all of the transfers without potential customers experiencing the situation where nobody is on the line, commonly known as "dead air."

36. GEICO and the telemarketing companies it works with keep their relationship and business practices secret from the public, in order to conceal that GEICO engages in telemarketing, and how it does so.

37. However, after substantial investigation, plaintiff has learned that one marketing company involved with the Hossfeld call was ICAN BPO Pvt. Ltd. Origination Services. ("Ican") Another company that appears to have been involved is called Nxt Solutions or a successor to that company.

38. Because GEICO conceals its relationship and cooperation with telemarketers, including ICAN, plaintiff cannot allege all of the facts and circumstances surrounding such.

39. Upon information and belief, GEICO controlled the timing and frequency of the predictively dialed calls, in order to ensure that it had operators sufficient to handle the leads that came in. Moreover, GEICO had complete control over its participation in these calls, and whether it made sales pitches during such calls.

40. The sales pitch portion of this call is material to the TCPA violation because telemarketing calls like these are treated differently than mere "informational" calls, such as debt collection or survey calls. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, GC Docket 02-278 (Feb. 15, 2012). GEICO itself, and no other, made this portion of the illegal call.

41. GEICO made an advertising pitch during the illegal call in spite of its knowledge that the call was improper, and thereby ratified the illegal call as well as the automated advertising campaign it was a part of.

42. Moreover, by participating in such call, GEICO knowingly and intentionally cloaked whatever third party that made such call with apparent authority to make such call.

43. Because of GEICO's voluntary and material participation in these calls, it would be reasonable for an ordinary person to believe that the use of an autodialer was authorized by GEICO. In such participation, GEICO cloaked ICAN or whatever other telemarketer may have been involved, with apparent authority to make such calls on its behalf.

44. Plaintiff and the class reasonably relied upon GEICO's cloaking of the telemarketer with apparent authority. Plaintiff answered the call, went through the questions posed by the telemarketer, suffered the annoyance of GEICO's advertising pitch, and ultimately asked that GEICO place him on its Do Not Call list.

45. Similarly, upon information and belief other class members obtained quotes for insurance, and some of those persons who obtained quotes accepted such and obtained insurance through GEICO.

### Facts as to Plaintiff Legg

46. On or around April 28, 2014, plaintiff Legg received a telephone call on his cellular telephone from caller ID 586-693-1044. Plaintiff missed this call.

47. On or around April 29, 2014, plaintiff Legg received a second telephone call on his cellular telephone from caller ID 586-693-1044. Plaintiff answered this call.

48. Both of these calls were made using an automatic telephone dialing system similar to the one used to call Hossfeld.

49. When plaintiff Legg answered the call a voice asked whether Legg was interested in automobile insurance. Plaintiff indicated that he was interested.

50. Upon information and belief, the voice plaintiff heard at the beginning of this call had been recorded ahead of time, and was therefore "prerecorded" in the sense contemplated by the TCPA.

51. A different voice then came onto the other end of the line and again asked plaintiff if Legg wanted a quote for automobile insurance. Plaintiff stated that he did.

52. The operator asked plaintiff a series of demographic and personal questions, and took plaintiff's email address.

53. Upon information and belief, that information was then entered into GEICO's computer system by the caller, for the purpose of issuing a quotation for insurance.

54. The calls to plaintiff Legg were part of a GEICO advertising campaign.

55. On or about April 30, 2014, defendant GEICO sent plaintiff Legg an email with a quote for automobile insurance. More emails followed, each one urging plaintiff to buy GEICO auto insurance, including one on May 13, 2014.

56. GEICO obtained the information for the emailed insurance quotes during the automated phone call it made to plaintiff.

57.	This lawsuit was pending when plaintiff Legg received these calls from GEICO.

58.	Upon information and belief, based upon the fact that it issued plaintiff a quote for insurance arising, the Legg calls came directly from GEICO.

59.	Alternatively, the calls came from some third party that was concealed as part of a telemarketing scheme in which GEICO actively participated.

60.	GEICO ratified the illegal telemarketing by issuing a quote for insurance to plaintiff. GEICO was on actual notice that autodialed telemarketing like this was happening, and failed to take adequate steps to prevent such.

61.	Additionally, to the extent that there may have been a third party that made these calls, GEICO cloaked such third party in apparent authority by authorizing it to gather potential customer information to be used for GEICO quotes, without disclosing to consumers that it was a third party.

### GEICO Policy and Practice of Obtaining Customers through Telemarketing

62.	GEICO regularly and knowingly accepts customers and potential customers, also known as "leads," that are derived through calls like those described above.

63.	Because GEICO participated in itself made the calls to Hossfeld and has a contract or course of dealing as to the company or companies that initially placed these calls, which provides for compensation to that company for leads that are referred, like that which occurred with respect to plaintiff.

64.	GEICO knew that it was issuing quotes arising out of illegal telemarketing.

65.	Indeed, GEICO has been sued for similar conduct before. *Matejovich v. GEICO*, No. 13-cv-71449 (N.D.Ill.) alleged nearly identical violations.[2] Upon information and belief,

---

[2] GEICO was eventually dismissed from *Matejovich* without prejudice.

*Matejovich* is not the only time GEICO has been sued for this type of alleged violation. Service was effectuated on GEICO in *Matejovich* on October 9, 2013, well before the Hossfeld call.

66. GEICO continued to make and/or participate in calls despite having been sued in *this case*, too. The Legg calls happened two months *after* this case was filed.

67. Despite the fact that it was placed on notice that such calls may violate the TCPA, GEICO continues to participate in such telemarketing, and to accept leads and business derived therefrom.

68. Neither GEICO nor the companies that placed these calls had plaintiff's "prior express written consent" to receive the calls, much less prior express written consent. Upon information and belief, both plaintiffs' phone numbers were obtained as part of a marketing list that was purchased and then indiscriminately loaded into an autodialer, or similar arrangement.

69. GEICO is directly liable for the telemarketing calls challenged here because it "made" the calls.

70. As to the Hossfeld call, although it may not have "pressed the button" to activate the dialer, it was an active and knowing participant in the illegal calls and made the telemarketing pitch that gave rise to the violation. *Maryland v. Universal Elections, Inc.*, 862 F.Supp.2d 457, 463 (D.Md. 2012), *aff'd*, 729 F.3d 370 (4th Cir. 2013).

71. As to the Legg call, upon information and belief, GEICO pressed the button that dialed the phone number. Alternatively, GEICO knowingly or recklessly participated in a scheme to conceal the identity of the third party that "pressed the button."

72. To the extent that third parties may have initiated these calls, GEICO is vicariously liable for the calls to both plaintiffs through principles of ratification. It paid for the

11

calls and leads, and knowingly accepted the benefit of the calls and leads by attempting to sell insurance during them and/or using information derived from them.

73. Moreover, GEICO was placed on notice that calls like these likely constituted violations of the TCPA through *Matejovich* action and this action, and continued issuing quotes and paying for such telemarketing in spite of this.

74. GEICO is also liable for any calls it did not "make" under the black-letter law principle that a person cannot avoid liability by hiring another to take actions for which there is a reasonable chance violate the law. See Restatement (Third) of Agency § 7.06; see also *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1438 (3d Cir. 1994). Here, GEICO knew that the calls violated the law, but continued to accept business derived from them, anyway.

75. The telemarketing scheme alleged herein is designed by GEICO to be opaque, and to conceal the nature of the relationship between the caller and GEICO from the public.

76. GEICO has absolute control over what types of marketing are performed to promote its goods and services. Despite this, it accepted new business and marketing leads derived through improper means as described herein.

Class Action Allegations

77. As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a class of all other persons or entities similarly situated throughout the United States, and two subclasses.

78. The class of persons Plaintiff proposes to represent is tentatively defined, subject to modification after discovery and case development as:

> All persons within the United States who GEICO or some party on its behalf, called on their cell phone using a predictive dialer for purposes of marketing

>GEICO products or services, for whom GEICO does not have a signed instrument stating that the recipient wishes to receive automatic telephone dialing system marketing calls from GEICO on the telephone number called.

Collectively, all these persons will be referred to as "Class members."

>Direct Transfer Subclass: Plaintiff alleges a subclass of persons within the class, whose phone calls were transferred to GEICO itself.

>Insurance Quote Subclass: Plaintiff alleges a second subclass of persons who were issued quotes for insurance arising out of such calls.

42. Excluded from the Class are Defendant, and any entities in which Defendant has a controlling interest, the Defendant's agents and employees, any Judge to whom this action is assigned and any member of such Judge's staff during the pendency of this action, and claims for personal injury, wrongful death and/or emotional distress.

43. Class members are identifiable through lead records, phone records and phone number databases.

44. Upon information and belief, the class members number at least in the thousands. Individual joinder of these persons is impracticable.

45. Plaintiff is a member of the class.

46. The Plaintiff and the class have all been harmed by the actions and omissions of the Defendant. Their privacy has been improperly invaded and thy have sustained a nuisance as a result of the calls. Moreover, their statutorily protected rights have been violated.

47. This Class Action Complaint seeks injunctive relief and monetary damages.

48. There are questions of law and fact common to Plaintiff and to the proposed class, including but not limited to the following:

>a. Whether GEICO is directly or vicariously liable for violations of the TCPA arising out of the calling of cell phones using an automatic telephone dialing system;

   b.  Whether GEICO can meet its burden of proof with respect to statutory defenses for such calls, given that no class member has provided his or her number to GEICO;

   c.  Whether GEICO's illegal conduct was knowing and/or willful;

   d.  Whether GEICO should be enjoined from engaging in such conduct in the future.

49. Plaintiff is an adequate representative of the class because his interests do not conflict with class member interests, he will fairly and adequately protect class member interests, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

50. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by GEICO and its vendors.

51. The likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

52. The interest of the Class members in individually pursuing claims against GEICO is minimal because the statutory damages for an individual action are relatively small, and are therefore not likely to deter Defendant from engaging in the same behavior in the future.

53. Moreover, because the calls were designed to conceal the identity of the seller until it was learned that the recipient was interested in car insurance, many class members likely have no idea these calls were linked to GEICO.

54. Defendant has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate.

55. The Plaintiff has retained counsel experienced in handling class action claims involving violations of federal consumer protection statutes, including claims under the TCPA.

56. Plaintiff is unaware of pending litigation concerning this controversy commenced by others who meet the proposed class definition.

## COUNT I – AUTOMATED CALLS TO CELL PHONES

57. Plaintiff incorporates all prior paragraphs of this Complaint.

58. The foregoing acts and omissions of Defendant and its vendors and telemarketers constitute violations of the Telephone Consumer Protection Act, 47 U.S.C. §227(b)(1)(A)(iii).

59. Defendant is directly and/or vicariously liable for the violations above.

60. There is no scienter requirement to prove these violations of the TCPA. 47 U.S.C. §227(b)(3). However, because Defendant's violations were willful and/or knowing, plaintiff and the class members are entitled to a maximum of up to treble the minimum statutory amount of $500, for a maximum of $1,500 for each violation. *Id.*

61. Plaintiff and all Class members are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by Defendant in the future. *Id.* Plaintiff seeks such injunctive relief in addition to, and/or as an alternative to money damages.

## DEMAND FOR JURY TRIAL

On behalf of himself and members of the class and subclass, Plaintiff demands a jury trial on all issues triable by a jury.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiffs and all Class members the following relief against the Defendant:

a. Statutory damages of $500 per call, pursuant to 47 U.S.C. §227(b)(3);

b. Treble damages if the violations are proven to be willful or knowing; *Id.*

c. An order certifying this case as a class action pursuant to Fed.R.Civ.P. 23(b)(3).

d. Any other relief the Court finds proper and appropriate.

Respectfully submitted,

/s/ Alexander H. Burke

Alexander H. Burke, *pro hac vice*
Burke Law Offices, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
aburke@burkelawllc.com


PETER A. HOLLAND
Federal Bar No. 10866
The Holland Law Firm, P.C.
P.O. Box 6268
Annapolis, MD 21401
410 280 6133
peter@hollandlawfirm.com


Law Office of Scott D. Owens, Esq., *pro hac vice*
664 E. Hallandale Beach Blvd.
Hallandale, Florida 33009
(954) 589-0588
(954) 337-0666 (fax)
scott@scottdowens.com

**DOCUMENT PRESERVATION DEMAND**

Plaintiff hereby demands that Defendant take affirmative steps to preserve all recordings, data, emails, recordings, documents and all other tangible things that relate to the allegations herein, plaintiff or the putative class members, or the making of telephone calls, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with plaintiff or the putative class members, and any account or number or symbol relating to any of them.

Plaintiff also demands that Defendant take affirmative steps to identify all third parties that may have been involved in the sort of telemarketing alleged herein instruct those them and any subvendors to initiate robust litigation holds as to call records and lead records, and preserve those materials.

These materials are very likely relevant to the litigation of this claim.  If defendant is aware of any third party that may have possession, custody or control of any such materials, plaintiff demands that defendant request that such third party also take steps to preserve the materials.  This demand shall not narrow the scope of any independent document preservation duties of the defendant.

/s/ Alexander H. Burke