IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

ROBERT HOSSFELD and CHRISTOPHER,
LEGG on behalf of themselves
and others similarly situated,

      Plaintiffs,

      v.                               CIVIL NO.: WDQ-14-0876

GOVERNMENT EMPLOYEES INSURANCE
COMPANY (D/B/A/ GEICO),

      Defendant.

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Robert Hossfeld and Christopher Legg ("the Plaintiffs") sued Government Employees Insurance Company ("GEICO") for violating the Telephone Consumer Protection Act ("TCPA").[1] Pending are GEICO's motion to dismiss, the Plaintiffs' motion to file a surreply, and the Plaintiffs' motion for leave to initiate limited early discovery. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the following reasons, the pending motions will be denied.

---

[1] 47 U.S.C. § 227(b)(1)(A)(iii).

I.   Background[2]

In the amended complaint, the Plaintiffs allege that GEICO "used an automatic telephone dialing system to call the cellular telephones of [the] [P]laintiffs . . . in attempts to sell GEICO insurance policies."[3] ECF No. 29 ("Am. Compl.") at ¶ 4. The Plaintiffs never consented to such calls. Id. at ¶ 5.

A. Call to Hossfeld

On February 12, 2014, at approximately 1:19 pm, Hossfeld received a call on his cellular telephone from number (301) 686-7207. Am. Compl. at ¶ 17. At the time, Hossfeld's cellular telephone number was on the National "Do Not Call" Registry. Id.

When Hossfeld answered the call, "[t]here was a distinctive pause on the line . . ., which indicated to [Hossfeld] that a machine, rather than a human being, dialed

---

[2] On a motion to dismiss, the well-pled allegations in the complaint are accepted as true. *Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011). The Court may consider the pleadings, matters of public record, and documents attached to the motions that are integral to the complaint and whose authenticity is not disputed. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

[3] "Because the calls were transmitted using technology that generated thousands of telemarketing calls per day, and because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, [the] [P]laintiffs bring this action on behalf of themselves and a proposed nationwide class of other persons who received illegal telemarketing calls from this Defendant." Am. Compl. at ¶ 6.

the call."[4]   Am. Compl. at ¶ 18.   Hossfeld had the following conversation with the person who came on the line after the "distinctive pause:"

> Caller: Hi, this is John Matthews, calling with regards to your interest in an auto insurance quote. Am I speaking with Shelly Morris? Hello?
>
> Hossfeld: Hello[5]
>
> Caller: Hi sir. This is John Matthews. How are you doing this afternoon?
>
> Hossfeld: All right.
>
> Caller: Oh. Sounds great. Sir, because you are an owner, you are entitled to a free insurance quote with a car insurance specialist to see if you can save money on your auto insurance premiums. Okay?
>
> Hossfeld: Hrmph.
>
> Caller: The best quote for you, sir, you will get the best bill, to save your money.
>
> I have to ask some questions before we go ahead, like: Do you currently have a car insurance policy?[6]

---

[4] The Plaintiffs contend that this call "was dialed by [a] telephone phone system that stored or produced telephone numbers to be called, and then dialed the numbers in sequential order as part of an automatic dialing campaign to call thousands of persons . . . ." Am. Compl. at ¶ 19. Further, "the system was programmed to dial the calls 'intelligently,' so as not to overwhelm live agents that field calls." Id. at ¶ 20.

[5] The Plaintiffs assert that Hossfeld "did not hear the portion of this recording before he said, 'hello'" because "the dialer system on which the call was made indicated to the telemarketer that [Hossfeld] was ready to receive a call before [he] had placed the phone up to his ear." Am. Compl. ¶ 21.

[6] The amended complaint has this line spoken by Hossfeld; however, because of the conversation and the responses, the Court believes that attributing this line to Hossfeld was an

You sir are over the age of eighteen years, correct?

Hossfeld: Correct.

Caller: Great. And sir, do you have a valid, active driver's license?

Hossfeld: Yes.

Caller: Alright. And I'd like to tell you, sir, that with this free quote, you can find how much money exactly you can be saved on your insurance premiums, okay?

Hossfeld: Okay.

Caller: Alright. So without wasting more time, sir, I will quickly go ahead and connect your call with the representation. They will quickly go ahead and analyze your current insurance, to see where they can save you costs, to low down your premiums.

And sir, let me tell you [indecipherable] for you, while I transfer your call, you will hear a brief pause, and then you will hear a [indecipherable]. Follow the instructions and just stay on the line and in a moment you will be connected with a representative agent. Just ask for your free quote. Alright, Sir?

Hossfeld: Yes. Do you have a website?

Caller: Uh, alright. We do have, sir. I will transfer you to a specialist, they are the best person who can help you with all information, like email website and telephone numbers, they are the best person who can help you.

Hossfeld: Okay sir?

Caller: Okay. So be on the line and someone will be with you right away. [Beep]

---

error, and it was spoken by the caller. *See* Am. Compl. at ¶ 21. The complaint does not have Hossfeld's response. *See id.*

Am. Compl. at ¶ 21.[7]

Hossfeld was transferred to "another live saleperson." Am. Compl. at ¶ 23. "The second salesperson began . . . by asking [Hossfeld] whether he wanted to save money on his car insurance." Id. at ¶ 24. Hossfeld asked what company the salesperson worked for, and she said she worked for GEICO. Id. at ¶ 25. Hossfeld informed the salesperson that he was on the National "Do Not Call" Registry. Id. at ¶ 26. The salesperson responded by asking whether Hossfeld was on GEICO's internal "Do Not Call" list. Id. at ¶ 27. When Hossfeld said that he was not, to his knowledge, on GEICO's internal list, the salesperson informed him that she would put him on the list, and he would not be called again. Id. at ¶¶ 27-28. The call then ended. See id.

The Plaintiffs contend that "GEICO dictated the details surrounding the call to Hossfeld." Am. Compl. at ¶ 33. The Plaintiffs allege that "in order to accept telemarketing call transfers, sellers must tell their telemarketers and lead generators the speed and volume of calls so that its operators do not become overwhelmed." Id. at ¶ 34. Thus, "GEICO dictated how quickly (or slowly) the dialer made calls, so that its sales

---

[7] The Plaintiffs assert that the caller, John Matthews, was reading from "a marketing script that was used during thousands of identical outbound telemarketing calls made in order to help obtain customers for GEICO" because Matthews's statements "were impersonal and sounded rehearsed." Am. Compl. at ¶ 22.

agents could handle all of the transfers without potential customers experiencing the situation where nobody is on the line, commonly known as 'dead air.'" *Id.* at ¶ 35.

B. Call to Legg

On April 28, 2014, Legg received a call on his cellular telephone from number (586) 693-1044. Am. Compl. at ¶ 46. Legg missed the call. *Id.* On April 29, 2014, the same number called Legg. *Id.* at ¶ 47. When Legg answered, a prerecorded voice asked whether Legg was interested in automobile insurance. *Id.* at ¶¶ 49-50. When Legg responded, "Yes," "a different voice then came onto the other end of the line and again asked [] if Legg wanted a quote for automobile insurance."[8] *Id.* "The operator asked [Legg] a series of demographic and personal questions, and took [Legg]'s email address." *Id.* The next day, Legg received an email from GEICO with a quote for automobile insurance. *Id.* at ¶ 55. "More emails followed, each one urging plaintiff to buy GEICO auto insurance . . . ." *Id.*

---

[8] The amended complaint does not state whether the caller identified himself; however, the Plaintiffs assert that the call came directly from GEICO based on the email that was received the next day. *See* Am. Compl. at ¶ 58. Alternatively, the Plaintiffs allege that the call came from a third party, and GEICO ratified the third party's actions by issuing the email quote. *Id.* at ¶¶ 59-60.

C. Procedural History

On March 20, 2014, Hossfeld sued GEICO for violating the TCPA. ECF No. 1. On August 11, 2014, the Court granted Hossfeld leave to file an amended complaint. ECF No. 27. The amended complaint added Legg as a plaintiff. ECF No. 28.

On August 25, 2014, GEICO moved to dismiss the complaint for failure to state a claim. ECF No. 29. On September 11, 2014, the Plaintiffs opposed the motion. ECF No. 30. On September 29, 2014, GEICO replied. ECF No. 32. On October 3, 2014, the Plaintiffs moved to file a surreply. ECF No. 33. On October 8, 2014, the Plaintiffs moved for leave to begin limited early discovery. ECF No. 35.

II. Analysis

A. The Plaintiffs' Motion to File a Surreply

Unless otherwise ordered by the Court, a party generally may not file a surreply. Local Rule 105.2(a). Leave to file a surreply may be granted when the movant otherwise would be unable to contest matters presented for the first time in the opposing party's reply. *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003), aff'd, 85 F. App'x 960 (4th Cir. 2004).

The Plaintiffs asked to file a surreply to discuss a case cited in GEICO's reply brief, and to clarify that federal common law agency principles rather than Maryland agency law controls. ECF No. 33 at 2. The case the Plaintiffs seek to address in

their surreply was cited by GEICO in its original motion to dismiss and by the Plaintiffs in their response. The Plaintiffs do not explain why their surreply argument could not have been made in their response. Accordingly, the motion for leave to file a surreply will be denied.

B. The Defendant's Motion to Dismiss

1. Legal Standard

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief may be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 557). The complaint must not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 679 (internal quotation marks omitted). "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks and alteration omitted).

    2. The Sufficiency of the Amended Complaint

Congress passed the TCPA in response to "[v]oluminous consumer complaints about abuses of telephone technology." *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740, 744 (2012). Congress intended "to protect individual consumers from receiving intrusive and unwanted calls."[9] *Gager v. Dell Fin. Servs.*, 727 F.3d 265, 268 (3d Cir. 2013). Congress also

---

[9] "The TCPA is a remedial statute and thus entitled to a broad construction." *Mey v. Monitronics Int'l, Inc.*, 959 F. Supp. 2d 927, 930 (N.D. W. Va. 2013). "Remedial statutes should be liberally construed and should be interpreted (when that is possible) in a manner tending to discourage attempted evasions by wrongdoers." *Scarborough v. Atlantic Coast Line R. Co.*, 178 F.2d 253, 258 (4th Cir. 1950) (discussing interpretation of remedial statutes generally); *see also Mey*, 959 F. Supp. 2d at 930 (applying that standard to the TCPA).

authorized the Federal Communications Commission (FCC) to implement rules and regulations enforcing the TCPA. 47 U.S.C. § 227(b)(2).

Section 227(b)(1)(A)(iii) of the TCPA makes it unlawful for "any person . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." To state a claim under this section of the TCPA, a plaintiff must allege: (1) that the defendant called the plaintiff's cellular telephone; (2) using an automatic telephone dialing system; (3) without the plaintiff's prior express consent. *Kristensen v. Cr. Payment Servs.*, 12 F. Supp. 3d 1292, 1300 (D. Nev. 2014); *Wagner v. CLC Resorts & Devs., Inc.*, 32 F. Supp. 3d 1193, 1195 (M.D. Fla. 2014). Here, GEICO argues that the Plaintiffs have not adequately alleged that GEICO made the calls to the Plaintiffs in a manner that made GEICO liable under the TCPA. *See* ECF No. 29 at 1.

In 2013, the FCC issued a declaratory ruling clarifying the meaning of "to initiate" a call under the TCPA. *In re Joint Petition filed by Dish Network, LLC*, 28 FCC Rcd. 6574 (2013).

The FCC determined "that a person or entity "initiates" a telephone call when it takes the steps necessary to physically place a telephone call, and generally does not include persons or entities, such as third-party retailers, that might merely have some role, however minor, in the causal chain that results in the making of a telephone call." *Id.* at 6583. There is "clear distinction between a call that is made by a seller and a call that is made by a telemarketer on the seller's behalf." *Id.* Thus, a seller is only directly liable when it places the call.[10]

However, a seller cannot avoid liability simply by delegating placing the call to a third-party. The FCC determined that "while a seller does not generally 'initiate' calls made through a third-party telemarketer within the meaning of the TCPA, it nonetheless may be held vicariously liable under federal common law principles of agency for violations of [] section 227(b) . . . that are committed by third-party telemarketers.. *See id.* at 6574. This includes "a broad range

---

[10] The FCC did recognize that "one can imagine a circumstance in which a seller is so involved in the placing of a specific telephone call as to be directly liable for initiating it — by giving the third party specific and comprehensive instructions as to timing and the manner of the call, for example." *In re Dish Network*, 28 FCC Rcd. at 6583; *see also Maryland v. Universal Elections, Inc.*, 729 F. Supp. 3d 370, 375-80 (4th Cir. 2013) (defendants directly liable for "creating" and "distributing" a message even though a third-party system actually relayed the calls).

of agency principles, including not only formal agency, but also principles of apparent authority and ratification."[11] *Id.* at 6584.

### a. Call to Hossfeld

In the amended complaint, the Plaintiffs do not allege that GEICO made the call to Hossfeld. Instead, they assert that a third-party made the call and then transferred the call to a GEICO sales representative. *See* Am. Compl. at ¶¶ 21-34. Thus, GEICO cannot be directly liable for the call. *See In re Dish Network*, 28 FCC Rcd. at 6574.

The Plaintiffs, however, have pled facts sufficient to allege vicarious liability. The Plaintiffs have alleged that GEICO contracted with third-party telemarketers, created scripts for those telemarketers, knew the third-parties were using automated dialing systems in violation of the TCPA, and had the third-parties make calls with those systems before forwarding

---

[11] "[T]he seller is in the best position to monitor and police TCPA compliance by third-party telemarketers. We thus agree that, consistent with the statute's consumer protection goals, potential seller liability will give the seller appropriate incentives to ensure that their telemarketers comply with our rules. *By contrast, allowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case.*" *In re Dish Network*, 28 FCC Rcd. at 6588 (emphasis added).

the call to GEICO sales representatives.[12]  *See* Am. Compl. at ¶¶ 21-35.  This is sufficient to survive a motion to dismiss.  *See In re Dish Network*, 28 FCC Rcd. at 6592 ("[A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. . . . *It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts.  Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps*

---

[12] GEICO argues that the Plaintiffs have not included enough facts about the relationship between the third-party telemarketer and GEICO to establish vicarious liability.  *See, e.g.*, ECF No. 29-1 at 8-11.  However, the Plaintiffs "need not plead the identity of every player in the alleged scheme nor every nuance of the relationships . . .; indeed, the information necessary to connect all the players is likely in [GEICO's] sole possession."  *Kristensen*, 12 F. Supp. 3d at 1302; *see also Charvat v. Allstate Corp.*, 29 F. Supp. 3d 1147, 1150-51 ("These objections are meritless because it is defendants, not plaintiff, who can reasonably be expected to know these facts, and plaintiff's allegations, taken together, suffice to entitle him to discovery on the issue of vicarious liability."); *In re Dish Network*, 28 FCC Rcd. at 6592-93.

*within its power to force the telemarketer to cease that conduct.*") (emphasis added).[13]

### b. Call to Legg

The Plaintiffs assert that the call to Legg was made directly by GEICO because Legg was never transferred to another sales representative and received a car insurance quote from GEICO the next day. *See* Am. Compl. at ¶¶ 46-55. Thus, the Plaintiffs have sufficiently pled GEICO's direct liability for the phone calls to Legg.

---

[13] *See also Kristensen*, 12 F. Supp. 3d at 1302 ("The FAC pleads sufficient facts to render it plausible that the party who made the [text message] . . . was acting as an agent or subagent of LeadPile and/or Click Media. The Lender Defendants contracted with LeadPile, who in turn contracted with Click Media. Click Media directed another entity to send a text message to multiple persons. That message included a link which automatically redirected to a site controlled by Click Media. Upon completing a loan application on Click Media's site, the consumer was directed to a site owned by LeadPile. LeadPile then sold the leads to the Lender Defendants. Thus, there was a "downhill" series of contractual relationships starting with the Lender Defendants down through Click Media, and the benefits of the text message (leads for potential payday lending customers) flowed back "uphill" through Click Media and LeadPile to the Lender Defendants. Kristensen has sufficiently pleaded a plausible agency relationship based on actual authority (arising through contractual relationships), apparent authority (based on a reasonable person's perception of who authorized the sending of the text message), and ratification (based on the apparent benefits received by Click Media and LeadPile)."); *Wagner*, 32 F. Supp. 3d at 1196 ("Wagner has sufficiently alleged a claim against Surrey under § 227(b) of the TCPA. Wagner alleged that Surrey contracted with Passport to market Surrey's resort and timeshare properties. Wagner also alleges that he received calls from Passport, and that the purpose of these calls was to pitch Surrey's timeshare products and to convince him to visit Surrey's sales offices.") (internal citations omitted).

Accordingly, the Court will deny GEICO's motion to dismiss.

C. The Plaintiffs' Motion to Begin Limited Early Discovery

The Plaintiffs request "leave to propound discovery prior to the entry of a scheduling order" in order to "preserve" evidence. ECF No. 35 at 1-2. Although the Plaintiffs assert that they are only trying to preserve evidence, the motion asks the Court to order GEICO to answer interrogatories and produce documents. *See id.* at 3. GEICO asserts that it has placed a litigation hold on all its internal documents and has delivered subpoenas to third-parties whenever the Plaintiffs have requested. ECF No. 37 at 2-3.

Under Local Rule 104-4, "discovery shall not commence and disclosures need not be made until a scheduling order is entered." Here, there is no good cause to order early discovery. The Plaintiffs' requests go beyond mere preservation of evidence until the scheduling order is entered. Further, as the Court will deny GEICO's motion to dismiss, the parties may hold a scheduling conference and proceed with formal discovery. Accordingly, the Court will deny the motion.

III. Conclusion

For the reasons stated above, the pending motions will be denied.

_2/25/15_
Date

_[signature]_
William D. Quarles, Jr.
United States District Judge